IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DAVID WALTER BURNS,   )
           )
    Petitioner,   )
           )
           )  CIV-08-458-M
v.          )
           )
JUSTIN JONES, Director,   )
           )
    Respondent.   )

REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the convictions for

Murder in the Second Degree and Possession of a Firearm After Felony Conviction entered

in the District Court of Oklahoma County, Case No. CF-2001-6232, against him following

a jury trial.   Respondent has responded to the Petition and filed the relevant state court

records. The matter has been referred to the undersigned Magistrate Judge for initial

proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is

recommended that the Petition be denied.

In his Amended Petition filed August 27, 2008, Petitioner asserts the following

grounds for habeas relief: (1) "[t]he State failed to prove beyond a reasonable doubt that

[Petitioner] was not acting in self-defense," (2) Petitioner was denied effective assistance of

counsel, (3) "[t]he cumulative effect of trial errors denied [Petitioner] a fair trial and caused [Petitioner] to be punished excessively," and (4) "[m]y direct appeal counsel was ineffective for failing to timely inform me my direct appeal was affirmed."  In support of these grounds, Petitioner adopts by reference his opening brief, as filed with the Oklahoma Court of Criminal Appeals ("OCCA"), in his direct appeal of the convictions in Case No. CF-2001-6232 and the claims asserted therein.  Petitioner's convictions and sentences were affirmed by the OCCA in an unpublished decision entered September 22, 2006. Response, Ex. 3 (Burns v. State, No. F-2004-347).

Preliminarily, it is clear from Petitioner's argument in ground four of the Amended Petition that this claim of ineffective assistance of appellate counsel is presented only in the event that the timeliness of the Petition pursuant to 28 U.S.C. § 2244(d)(1) is challenged. Respondent has responded to the Petition and has not asserted a timeliness issue.  To the contrary, Respondent has conceded that the Petition has been timely filed.  Therefore, Petitioner's fourth ground asserted in the Amended Petition is moot and will not be addressed on its merits as a separate ground for § 2254 relief.

I. Standard of Review

With respect to the claims raised by Petitioner in grounds one through three of the Amended Petition that were adjudicated on their merits in state court, the standard for reviewing Petitioner's claims is prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Under this standard, habeas relief may be awarded if the state appellate court's ruling was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. Saiz v. Ortiz, 392 F.3d 1166, 1176 (10th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).  Federal courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).  If there is no clearly established federal law in Supreme Court cases involving facts that are closely related or similar to those in the case being reviewed, the court need not assess whether the state court's holding was "contrary to" or an "unreasonable application" of established federal law.  House v. Hatch, 527 F.3d 1010, 1016-1017 (10th Cir. 2008)(interpreting Carey v. Musladin, 549 U.S. 70 (2006)).  Where the Supreme Court's "cases give no clear answer to the question presented, ...., it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law," and habeas "relief is unauthorized" under the explicit language of 28 U.S.C. § 2254(d)(1).  Wright v. Van Patten, __ U.S. __, 128 S. Ct. 743, 747 (2008)(internal quotation and citation omitted).

If "the threshold question as to the existence of clearly established federal law" is answered affirmatively, then the reviewing court must determine whether the state court decision is either contrary to or an unreasonable application of that law. House, 527 F. 3d at 1010, 1018. A state court decision is "contrary to" established Supreme Court precedent if

the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Williams, 529 U.S. at 405-406, 413.

A state court decision is an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(per curiam). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(per curiam)(citations omitted). The AEDPA mandates that factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

II. Sufficiency of the Evidence

Petitioner challenges the sufficiency of the evidence presented at his trial to support his conviction for Murder in the Second Degree. Specifically, Petitioner contends the prosecution did not prove that the homicide was not committed in self-defense. With respect to this contention, Petitioner is asserting, as he did in his direct appeal, that the OCCA's

4

decision is contrary to or an unreasonable application of <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319; <u>see</u> <u>Messer v. Roberts</u>, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting <u>Jackson</u>). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. <u>Lucero v. Kerby</u>, 133 F.3d 1299, 1312 (10th Cir.), <u>cert. denied</u>, 523 U.S. 1110 (1998). In applying this standard, the court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" <u>Messer</u>, 74 F.3d at 1013 (quoting <u>Grubbs v. Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. <u>Jackson</u>, 443 U.S. at 309, 324 n.16. In Oklahoma, a homicide is murder in the second degree when the homicide is "perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect death." Okla. Stat. tit. 21,

§701.8(1).   "The elements of second degree depraved mind murder are ... 1. death of a human; 2. caused by conduct which was imminently dangerous to another person; 3. the conduct was that of the defendant; 4. the conduct evinced a depraved mind in extreme disregard of human life; [and] 5. the conduct is not done with the intention of taking the life of any particular individual." Taylor v. State, 998 P.2d 1225, 1231 (Okla. Crim. App. 2000), cert. denied, 531 U.S. 1157 (2001).

Because Petitioner raised the issue of self-defense at his trial, the prosecution had the burden of proving beyond a reasonable doubt that Petitioner was not acting in self-defense. Bechtel v. State, 804 P.2d 1, 14 (Okla. Crim. App. 1992); Perez v. State, 798 P.2d 639, 641 (Okla. Crim. App. 1990). "Self-defense is an affirmative defense which admits the elements of the charge, but offers a legal justification for conduct which would otherwise be criminal." McHam v. State, 126 P.3d 662, 667 (Okla. Crim. App. 2005). The use of deadly force is justifiable only if the individual being threatened reasonably believed that the use of deadly force was necessary to protect himself or herself from imminent danger of death or great bodily harm. Chapple v. State, 866 P.2d 1213, 1215 (Okla. Crim. App. 1993)(approving jury instruction as proper statement of the law in Oklahoma).

Petitioner and a co-defendant, Mr. Smith, were charged in count one of the information filed in CF-2001-6232 with the offense of Murder in the First Degree (with malice aforethought). This charge related to the death of Mr. Otis Payne on November 24, 2001. In count two, Petitioner was charged with the offense of Shooting with Intent to Kill. This charge related to the shooting of Mr. Meldon Moore on November 24, 2001. In count

6

three, Petitioner was charged with Possession of a Firearm after prior felony conviction.  In count four, Petitioner and his co-defendant were charged with the offense of Possession of Controlled Dangerous Substance.  With respect to the charge in count one, the jury was instructed on the offense of first degree murder and the lesser-included offense of second degree depraved mind murder. Original Record, at 105-112.  See Shrum v. State, 991 P.2d 1032, 1036 n. 8 (Okla. Crim. App. 1999)(recognizing second degree murder is considered a lesser-included offense of first degree murder in Oklahoma).  The jury was also instructed on self-defense and flight. Original Record, at 104, 117-125.  The jury found Petitioner guilty of second degree murder.  Petitioner was also found guilty of the charge in count three. Petitioner was found not guilty of the charges in counts two and four.  He was sentenced consistent with the jury's recommendation to a 25-year term of imprisonment for the second degree depraved mind murder conviction and to a consecutive 5-year term of imprisonment for the felony firearm conviction.

In Petitioner's direct appeal, the OCCA's decision includes lengthy factual findings based on the evidence presented at Petitioner's trial.  See Response, Ex. 3, at 2-4.  These factual findings are incorporated by reference herein and will not be repeated.  Petitioner has not overcome the presumption of correctness attached to these factual findings. 28 U.S.C. § 2244(d)(2).

Applying the well-established Jackson standard, the OCCA rejected Petitioner's claim of insufficient evidence based on the following findings:

The undisputed evidence shows that Otis Payne [the victim]

> remained inside Harris's vehicle during the entire incident, that
> Payne never participated in the altercation between Meldon
> Moore and Burns, and that Payne never presented any type of
> threat to Burns.  This evidence was more than sufficient for the
> jury to find beyond a reasonable doubt that Burns was not acting
> in self-defense against Payne when he fired the fatal shots.

Response, Ex. 3, at 5.  Petitioner has made no effort to demonstrate that the OCCA's decision

is contrary to or an unreasonable application of the <u>Jackson</u> standard.  Petitioner merely

recites the arguments presented in his direct appeal.  In his appellate brief, Petitioner asserted

there was testimony at his trial, mainly Petitioner's own testimony, from which the jury could

have found Mr. Moore's conduct created a justifiable and reasonable belief on the part of

Petitioner that shooting Mr. Moore was necessary to protect Petitioner from an imminent

danger of death or great bodily harm.  Petitioner testified at his trial that Mr. Moore

threatened to "smoke" Petitioner and that Mr. Moore then returned to the vehicle in which

he was riding and turned around and faced Petitioner while holding something in his hand.

Trial Transcript, Continuation of Jury Trial, Vol. 1, at 228-230.  In his brief filed in his

appeal, Petitioner also pointed to witnesses' testimony that Mr. Moore initiated the

confrontation with Petitioner and was angry and threatening to beat up Petitioner.  Response,

Ex. 1 (Opening Brief of Appellant), at 19.

Several witnesses, including Mr. Moore, testified that Mr. Moore did initiate an angry

confrontation with Petitioner while the two were leaving a crowded parking area attached to

two night clubs.  Trial Transcript, Vol. 2, at 253; Vol. 3, at 15, 97-98, 164-166. However,

there was testimony from several witnesses that Mr. Moore threatened to beat up Petitioner

but that Mr. Moore did not threaten to kill Petitioner, that Mr. Moore did not have a weapon

or anything in his hands during the confrontation with Petitioner, and that Mr. Moore was

retreating from the confrontation by walking away from the Petitioner's vehicle at the time

Petitioner shot him. Trial Transcript, Vol. 2, at 258; Vol. 3, at 16-17, 21-22, 24, 32, 34, 48,

51, 98, 100-102, 109-110, 165-167, 172-175, 177-178, 214; Vol 4, at 18-19, 44-45, 49, 181-

183.   One witness testified she was attempting to get Mr. Moore to retreat from his

confrontation with Petitioner when she heard someone say, "Get my gun," and then she

started running and heard gunshots. Trial Transcript, Vol. 3, at 101-102.  She testified that

this statement was not made by Mr. Moore but came from within the vehicle Petitioner was

driving at the time of the confrontation.  Trial Transcript, Vol. 3, at 101-104.  The victim of

the shooting, Mr. Payne, was found in the back seat of Mr. Harris's vehicle (the vehicle in

which Mr. Moore was a passenger), and the evidence showed Mr. Payne was shot in the

head.  Trial Transcript Vol. 3, at 105-106, 176-177; Vol. 4, at 86.  Witnesses also testified

that following the shooting Petitioner drove away from the scene at a high rate of speed, and

a witness in the vehicle with Petitioner testified that as he was leaving the scene of the

shooting Petitioner stated he was not going back to jail. Trial Transcript, Vol. 3, 104-105,

177; Vol. 4, at 187-189.  Petitioner admitted that he shot at Mr. Moore three times. Trial

Transcript, Continuation of Jury Trial, Vol. 1, at 230-231.  Based on the evidence presented

at trial, viewed in the light most favorable to the prosecution, a reasonable jury could easily

have found the elements of second degree murder with respect to the shooting Mr. Payne.

Additionally, a reasonable jury could easily have found that the evidence did not show

9

Petitioner was threatened by the victim, Mr. Payne, and therefore that Petitioner did not shoot Mr. Payne in self-defense.

Because Petitioner has not demonstrated that the OCCA's decision was contrary to or an unreasonable application of <u>Jackson</u>'s standard, and he has not shown that the OCCA's decision was based on an unreasonable determination of the facts in light of the evidence, Petitioner is not entitled to habeas relief concerning this claim.

III. <u>Effective Assistance of Trial Counsel/Jury Instructions</u>

In ground two, Petitioner contends that he was denied his Sixth Amendment right to the effective assistance of trial counsel. Petitioner's claim of ineffective assistance is based on his trial counsel's failure to request a jury instruction on manslaughter in the first degree (heat of passion). Petitioner also contends that the trial court erred in failing to *sua sponte* give this instruction to the jury. In rejecting this claim in Petitioner's direct appeal, the OCCA found that there was no evidence to support the instruction. Specifically, the OCCA found:

> In the instant case, the evidence (including [Petitioner's] own testimony) shows that [Petitioner] shot and killed the victim Otis Payne but that it was Meldon Moore who was the provocateur that supposedly aroused the fear. The uncontroverted evidence also shows that the victim, Otis Payne, was in the rear seat of Aaron Harris's vehicle during the entire incident and did not participate in any way in the altercation between Moore and [Petitioner]. Because the evidence does not show that Otis Payne, the victim, provoked [Petitioner's] fear in any way, a first-degree heat of passion manslaughter instruction was not warranted. Thus, trial counsel's performance was not deficient for not requesting the instructions, and the trial court did not err by not providing it *sua sponte*.

10

Response, Ex. 3, at 7-8.

Petitioner has made no effort to demonstrate that the OCCA's decision regarding this claim was an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the governing Supreme Court standard on the issue of ineffective assistance of counsel claims. Under this standard, evaluation of the effectiveness of Petitioner's trial counsel's assistance "requires a two-part inquiry. 'In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Williamson v. Ward</u>, 110 F.3d 1508, 1514 (10th Cir. 1997)(quoting <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986)). Counsel's performance is evaluated from the attorney's perspective at the time of the assistance, considered in light of all the circumstances prevailing at that time, and indulging a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. "A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." <u>Maes v. Thomas</u>, 46 F.3d 979, 984 (10th Cir. 1995). The issue is "not whether the instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process." <u>Id.</u> (internal quotations omitted).

Considering the facts as found by the OCCA, there was no evidence admitted at

Petitioner's trial showing that Mr. Payne provoked Petitioner. See Eizember v. State, 164 P.3d 208, 236 (Okla. Crim. App. 2007)(elements of heat-of-passion manslaughter include adequate provocation), cert. denied, __ U.S. __, 128 S. Ct. 1676 (2008); Okla. Stat. tit. 21, § 711 (defining heat-of-passion manslaughter); Cipriano v. State, 32 P.3d 869, 874 (Okla. Crim. App. 2001)("The question [in heat-of-passion manslaughter case] is whether, in addition to evidence of intent, there was evidence that Appellant killed the deceased with adequate provocation, in a heat of passion, without the design to effect death.). Consequently, Petitioner's trial counsel's failure to request an instruction on the offense of heat-of-passion manslaughter was not professionally unreasonable.  Likewise, the trial court's failure to *sua sponte* instruct the jury on a heat-of-passion manslaughter offense did not render Petitioner's trial fundamentally unfair.  Petitioner has not shown that the OCCA's rejection of his claims of ineffective assistance of trial counsel and trial court error in failing to give a jury instruction on first degree manslaughter was contrary to or an unreasonable application of clearly established Supreme Court jurisprudence.

IV. Prosecutorial Misconduct and Trial Errors

In Petitioner's third ground for habeas relief, Petitioner asserts that various errors at his trial deprived him of due process and a fair trial.  In this claim, Petitioner lumps together the issues raised in his direct appeal in the first four propositions.  Amended Petition, at 9. The first and second propositions raised by Petitioner in his direct appeal have been addressed and rejected on their merits previously in subdivisions II and III.

In the third proposition presented by Petitioner in his direct appeal, Petitioner asserted

12

that certain "improper comments" by the prosecutor deprived him of a fundamentally fair trial. Response, Ex. 1, at 30.   Petitioner also asserted that his trial counsel's failure to object to these "improper comments" constituted ineffective assistance of counsel in violation of Strickland, 466 U.S. at 695.   In support of these claims, Petitioner referred to instances during *voir dire*, opening statement, and closing arguments when "the prosecutor improperly attempted to distinguish between malice aforethought and premeditation" and "[i]mproperly invok[ed] sympathy for the victim." Response, Ex. 1, at 31-32.

With respect to this claim, the OCCA found that Petitioner had complained

> specifically of seven instances where the prosecutor mentioned the terms 'malice aforethought' and ' premeditation' together. Six of the instances occurred during *voir dire* and one occurred during closing argument.  In one instance, the prosecutor simply stated, 'Malice aforethought as we've alleged here does not mean premeditated, and the judge will explain the difference.' In the remaining instances, the prosecutor did nothing more than explain to jurors that the State was not alleging that [Petitioner] went to the Lexus Club/Horace's with a plan to murder Otis Payne.

Response, Ex. 3, at 8.  The appellate court concluded that these comments and the context in which they were made was not confusing or improper.  With respect to Petitioner's claim of ineffective assistance of counsel due to counsel's failure to object to these comments by the prosecutor, the OCCA found that "[b]ecause [Petitioner] was convicted of the lesser included offense of second degree murder, which does not require a showing of malice aforethought or any premeditated intent, any confusion created by the prosecutor's references to malice aforethought and premeditation could not have affected the jury's verdict on

second-degree murder." Response, Ex. 3, at 9. Thus, the court found Petitioner had not shown prejudice under the prevailing Strickland standard.

As to the contention that the prosecutor had improperly attempted to invoke the jury's sympathy toward the victim, the OCCA noted that the first of these comments "occurred during opening statement when the prosecutor told the jury that the victim Otis Payne could not introduce himself to the jury because he was 'six feet under' in a casket. The second occurred during closing argument when the prosecutor stated that Payne would never see another sunrise." Response, Ex. 3, at 9-10. The court concluded that the outcome of the trial, in which Petitioner was acquitted of the more serious murder charge and the jury recommended a sentence near the lower end of the statutory ten year to life sentencing range for the offense, was "sufficient to contradict any claim that this jury's decision was driven by passion." Response, Ex. 3, at 10.

In this claim, Petitioner does not allege that the prosecutor's comments directly affected a specific constitutional right. Under these circumstances, "[h]abeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974)), cert. denied, 526 U.S. 1052 (1999). This determination is made "only after considering all of the surrounding circumstances, including the strength of the state's case." Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005), cert. denied, 547 U.S. 1181 (2006).

Petitioner has made no effort to demonstrate that the OCCA's rejection of these claims

14

was contrary to or an unreasonable application of the governing <u>Donnelly</u> and <u>Strickland</u> standards. Because Petitioner was not convicted of the offense of first degree murder, Petitioner has not shown that the prosecutor's comments concerning certain elements of a first degree murder offense adversely impacted Petitioner's trial. The prosecutor's comments allegedly invoking sympathy for the victim were innocuous and rare. Moreover, the evidence of Petitioner's guilt of the second degree murder offense and the felony firearm offense presented at his trial was substantial. Petitioner has not shown that the prosecutor's comments rendered his trial fundamentally unfair or that he was prejudiced by his trial counsel's failure to object to the prosecutor's comments during *voir dire*, opening arguments, and closing statements. Because the OCCA's decision was not contrary to or an unreasonable application of the <u>Donnelly</u> and <u>Strickland</u> standards, and the decision was not based on an unreasonable determination of the facts in light of the evidence presented at his trial, Petitioner is not entitled to habeas relief concerning these claims.

In proposition four in his direct appeal, Petitioner asserted that certain evidentiary rulings by the trial court denied him a fair trial. To the extent Petitioner contends that the trial court's evidentiary rulings violated state law, it is well established that the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, laws, or treaties. *E.g.*, <u>Mabry v. Johnson</u>, 467 U.S. 504, 507 ( 1984); <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982); <u>Brinlee v. Crisp</u>, 608 F.2d 839, 843 (10th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1047 (1980). The Supreme Court has recognized that "[f]ederal courts have no supervisory authority over state judicial

proceedings and may intervene only to correct wrongs of constitutional dimension." Smith, 455 U.S. at 221.

In support of his claim of errors in evidentiary rulings, Petitioner first pointed to the trial court's ruling denying defense counsel the opportunity to impeach a prosecutorial witness's testimony with her prior inconsistent statement to police.  Petitioner cited only state law in support of this allegation of trial error. Response, Ex. 1, at 33-34.  The OCCA reviewed the adequacy of this ruling under state rules of evidence and found that the trial court's ruling was correct because the police report that defense counsel wished to use for impeachment purposes was hearsay with respect to the prosecutor's witness. Response, Ex. 3, at 11-13. Moreover, the OCCA found that the trial court did permit Petitioner's defense counsel to place the witness's prior inconsistent statement to police before the jury in order to impeach her testimony. Response, Ex. 3, at 11.

The OCCA rejected Petitioner's related claim that the trial court had shown bias toward the prosecution when it ruled defense counsel could not use a police report to impeach the prosecutor's witness. Response, Ex. 3, at 13-14.   Because Petitioner did not object to this evidentiary ruling at trial, the OCCA reviewed Petitioner's claim of favoritism under its plain error standard.   The court found that Petitioner had presented only a conclusion of favoritism in two evidentiary decisions made by the trial court and rejected the claim. Id.

Petitioner also complained in his direct appeal of error in the trial court's admission into evidence of the videotaped statements made by three prosecutorial witnesses, Ms.

Jackson, Ms. Parker, and Ms. Williams. Response, Ex. 3, at 14-15.  The OCCA rejected this claim of improper admission of evidence during trial.  Specifically, the court denied relief concerning Petitioner's allegation of error in the admission of the videotaped statement of Ms. Jackson because Petitioner had not supplied any reference to the record, any citation to authority, or any supporting rationale for this claim.  Response, Ex. 3, at 15.  The OCCA denied relief concerning Petitioner's allegation of error in the admission of the videotaped statement of Ms. Parker because defense counsel stipulated during trial that the tape presented a true and accurate depiction of the custodial interview of Ms. Parker and "affirmatively argued for admission of the entire tape."  Response, Ex. 3, at 14-15.  Finally, the OCCA denied relief concerning Petitioner's allegation of error in the admission of the videotaped statement of Ms. Williams because defense counsel had conceded during trial that the taped statement could be admitted for impeachment purposes and because Petitioner had provided only a "conclusory allegation of error" in the admission of this videotaped statement. Response, Ex. 3, at 16-17.  Petitioner has not shown that the state court errors of which Petitioner complains "'deprived him of fundamental rights guaranteed by the Constitution of the United States.'"  <u>Jackson v. Shanks</u>, 143 F.3d 1313, 1317 (10th Cir.)(quoting <u>Brinlee</u>, 608 F.2d at 843), <u>cert. denied</u>, 525 U.S. 950 (1998).  Accordingly, Petitioner is not entitled to federal habeas relief concerning these claims of state court errors in the admission of evidence.

In a separate allegation of trial court error, Petitioner contended in his direct appeal that the trial court erroneously prohibited him from questioning two prosecutorial witness,

Ms. Jackson and Ms. Parker, about specific instances of violent conduct by Mr. Moore and whether Mr. Moore was a gang member, had ever carried a gun, or had a habit of starting fights.  Relying entirely on state law for its rationale, the OCCA found that Ms. "Parker's knowledge of [Mr. Moore's gang membership status] reveals nothing of the reasonableness of [Petitioner's] belief as seen from his viewpoint and under the circumstances confronting him at the time of the shooting" and therefore this evidence was not relevant to any element of Petitioner's claim of self-defense. Response, Ex. 3, at 19.  Likewise, the OCCA found that Ms. "Jackson's knowledge of specific instances of [Mr.] Moore's prior violent conduct had no bearing on the reasonableness of [Petitioner's] belief that he was facing imminent danger of death or great bodily harm" and therefore the trial court did not abuse its discretion by limiting defense counsel's inquiry into Ms. Jackson's knowledge of specific instances in which Mr. Moore carried weapons or started fights. Response, Ex. 3, at 20.

Petitioner has made no effort to demonstrate that the OCCA's decision in this respect was contrary to or an unreasonable application of clearly established law as determined by the Supreme Court. In Oklahoma, a defendant who has "laid a proper foundation of self-defense ... may introduce evidence of specific acts of violence on the part of deceased against persons other than the defendant, when these are known to defendant prior to the homicide." Harris v. State, 400 P.2d 64, 70 (Okla. Crim. App. 1965).  Petitioner did not seek to introduce evidence of the bad character of the victim, Mr. Payne, and Petitioner was found not guilty of the offense of Shooting with Intent to Kill involving Mr. Moore.  The OCCA's rejection of these claims of trial court errors was not unreasonable or unduly prejudicial under the

circumstances present at Petitioner's trial.  Thus, Petitioner is not entitled to federal habeas relief as to these claims of error in evidentiary rulings made by the trial court.

Petitioner contended in his direct appeal that his due process rights were violated when his defense counsel was prohibited from questioning a police officer about a videotape that was lost.  In his direct appeal, Petitioner asserted that a lost videotape recorded in police officer Buchanan's patrol car some time after the officer arrived on the scene of the shooting "captured conversations between [Ms.] Parker or [Mr.] Harris and Club Lexus security guard J.R. Reed." Response, Ex. 3, at 20.  Petitioner contended that the statements were exculpatory because they were relevant to his theory of self-defense. Id., at 20-21.

The OCCA rejected this claim and reasoned that "in the absence of any allegation or evidence that the videotape was lost as a result of bad faith on the part of police, this claim must be denied." Response, Ex. 3, at 21.  The OCCA expressly found that its holding was foreclosed by its decision in Hogan v. State, 877 P.2d 1157, 1161 (Okla. Crim. App. 1994), in which the court "adopted the rule announced by the United States Supreme Court in Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 334, 102 L.Ed. 2d 281, 289 (1998), that 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" Response, Ex. 3, at 21.  The OCCA's factual finding that no bad faith accompanied the loss of the videotape is presumed correct in this habeas proceeding, and Petitioner has not overcome the presumption of correctness with clear and convincing evidence.  The OCCA also found that the trial court did not abuse its discretion in sustaining the prosecution's

19

objection to Petitioner's attempt to admit the testimony of Officer Buchanan under an "excited utterance" exception to Oklahoma's hearsay rules.  Petitioner has not shown that the OCCA's rejection of this claim was contrary to or an unreasonable application of the Supreme Court's decision in <u>Arizona</u> or that the decision was based on an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial.

Petitioner asserted in his direct appeal that the cumulative effect of errors in his case warranted the reversal in his conviction or a modification of his sentence. Cumulative error analysis "applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1113 (10th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1025 (1999).  Here, no errors have been found, and therefore no cumulative error analysis is required.[1]

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by    February 24th   , 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.  <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir.

---

[1]Although Petitioner raised various *pro se* claims in his direct appeal, he has not expressly raised these *pro se* claims in his Amended Petition.  Accordingly, these *pro se* claims are not addressed herein.

1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   4th     day of    February   , 2009.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE